UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

JACOB MICHAEL DIAL and
JESUS PENA,

       Plaintiffs,                Case No.: 8:23-cv-01650-VMC-TGW

v.

GEICO GENERAL INSURANCE CO.,

       Defendant.

_____/

## PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO GEICO'S SECOND AND FOURTH AFFIRMATIVE DEFENSES

Plaintiffs, Jacob Michael Dial and Jesus Pena, pursuant to Rule 56 of the Federal Rules of Civil Procedure, hereby move for the entry of partial summary judgment as to GEICO General Insurance Company ("GEICO")'s Second and Fourth Affirmative Defenses in its *Answer and Affirmative Defenses to Plaintiff's Amended Complaint* (Doc. 36), and state:

## INTRODUCTION

In this insurance bad faith case, GEICO is attempting to apply a law that was passed in 2023 to absolve itself from liability for its bad faith conduct that occurred three years earlier. GEICO claims this Court must apply the 2023 law to rewrite the terms of the policy and eliminate the protections that were bargained for, and paid for, by GEICO's customer in 2020. And GEICO argues that even if a reasonable jury could find GEICO liable for bad faith failure to settle, Plaintiffs' claims are barred under the 2023 law.

Thus, the issue before the Court is whether the amendments to section 624.155, Florida Statutes, passed in chapter 2023-15, Florida Laws (commonly known as

HB 837), apply to insurance bad faith actions arising out of liability policies issued *before* March 24, 2023, when the amendments were signed into law. [1]  The Court should answer that question in the negative because both the plain language of the statute and the Florida and U.S. Constitutions prohibit this Court from applying HB 837 retroactively to a case arising out of a liability insurance policy issued before HB 837's effective date. Accordingly, the Court should grant Plaintiffs partial summary judgment as to GEICO's Second and Fourth Affirmative Defenses.

## STATEMENT OF MATERIAL FACTS

1.      This is a third-party insurance bad faith action brought by the injured claimants / judgment creditors, Jacob Michael Dial and Jesus Pena, against GEICO, the insurance company that provided liability coverage to the tortfeasor / judgment debtor, Jaimey Grant. This Court has diversity jurisdiction under 28 U.S.C. § 1332. See Doc. 30, ¶¶ 1-5; Doc. 36, ¶¶ 1-5.

2.      On September 29, 2020, Grant negligently operated a motor vehicle such that it struck a vehicle being operated by Dial, in which Pena was riding as a passenger. Doc. 30, ¶ 11; Doc. 36, ¶ 11.

3.      Grant was insured under a liability insurance policy issued by GEICO with a policy period of May 26, 2020 through November 26, 2020. Doc. 30, ¶ 6; Doc. 36, ¶ 6. It is undisputed that the policy provided liability coverage to Mr. Grant for the subject accident. Doc. 36, ¶¶ 6 and 8.

---

[1] See https://www.flsenate.gov/Session/Bill/2023/837 (indicating the Governor signed HB 837 into law on March 24, 2023).

4.    On January 14, 2021, Dial and Pena filed a personal injury lawsuit against Grant. Doc. 30, ¶ 25; Doc. 36, ¶ 25. That lawsuit concluded on May 17, 2023, with final judgments being entered in favor of Dial and Pena and against Grant for amounts well in excess of Grant's policy limits. Doc. 30, ¶¶ 26-27; Doc. 26, ¶¶ 26-27.[2]

5.    Dial and Pena filed this lawsuit against GEICO on July 21, 2023. Doc. 1. Plaintiffs, as the judgment creditors and third-party beneficiaries of the liability coverage, have standing to bring this bad faith case under <u>Thompson v. Commercial Union Ins. Co. of N.Y.</u>, 250 So. 2d 259, 263-64 (Fla. 1971). GEICO admits that Plaintiffs have standing to bring this action under Florida law. Doc. 36, ¶¶ 9-10.

6.    Plaintiffs contend GEICO acted in bad faith (in violation of the common law) by failing to settle Dial's and Pena's liability claims when it could and should have done so had it been acting fairly and honestly toward its insured and with due regard for his interests. <u>See</u> Doc. 30. GEICO denies those allegations. <u>See</u> Doc. 36.

## ARGUMENT

7.    Plaintiffs now seek partial summary judgment as to GEICO's Second and Fourth Affirmative Defenses:[3]

---

[2] Although these judgments were entered by consent, "a plaintiff can base a bad-faith claim on a consent judgment that exceeds available insurance coverage." <u>McNamara v. Gov't Employees Ins. Co.</u>, 30 F.4th 1055, 1060 (11th Cir. 2022).

[3] Plaintiffs believe GEICO's Third Affirmative Defense – which states "Plaintiffs' claims are barred pursuant to Fla. Stat. § 624.155(5)(a), as the acts claimed by Plaintiffs are insufficient to state a cause of action for bad faith against GEICO" – is effectively a codification of existing law. <u>See, e.g.</u>, <u>Campbell v. Gov't Emps. Ins. Co.</u>, 306 So. 2d 525, 530 (Fla. 1974) (holding the standard under Florida law "for determining liability in an excess judgment case is bad faith rather than negligence"). Therefore, it does not raise the same retroactivity concerns as the Second and Fourth Affirmative Defenses.  However, to the extent the Third Affirmative Defense pleads a defense based on a substantive change in the law as a result of HB 837, then the defense fails for the same reasons as GEICO's Second and Fourth Affirmative Defenses.

<u>Second Affirmative Defense</u>
Plaintiffs' claims are barred by Fla. Stat. § 624.155(4)(a).  Specifically, GEICO tendered its Insured's bodily injury per person policy limits to Mr. Dial and Mr. Pena within ninety (90) days of receiving actual notice of Plaintiffs' claims, accompanied by sufficient evidence to support the amount of the claims.

<u>Fourth Affirmative Defense</u>
Plaintiffs are not entitled to damages as Plaintiffs and/or their attorneys breached their duties under Fla. Stat. § 624.155(5)(b) to act in good faith in: 1) furnishing information regarding the claim; 2) in making demands of the insurer; 3) in setting deadlines; and 4) in attempting to settle the claim.

Subsections (4)(a) and (5)(b) of section 624.155, Florida Statutes, were created by HB 837. As explained in the memorandum of law below, any argument that HB 837 applies to the instant case – which arises out of an insurance policy issued before HB 837's effective date of March 24, 2023 – is frivolous as a matter of both statutory interpretation and constitutional law.

8.    When evaluating whether a new law should apply to a policy issued before the effective date of that law, courts applying Florida law must engage in a two-step inquiry: (1) whether the Florida Legislature intended for the statute to apply retroactively (as reflected by the statutory language); and (2) if such an intent is clearly expressed, whether retroactive application would violate any constitutional principles. See <u>Menendez v. Progressive Exp. Ins. Co., Inc.</u>, 35 So. 3d 873, 877 (Fla. 2010).  Here, HB 837's amendments to section 624.155 fail both prongs:

a.    Section 29 of HB 837 unequivocally provides that "to the extent that this act affects a right under an insurance contract," it only applies to contracts issued or renewed *after* the effective date.  Thus, the Legislature did *not* clearly express an intention for the new law to apply retroactively.

4

b. And even if the Legislature had directed that the amendments to section 624.155 be applied to cases arising from policies issued before the effective date – and it did not – that would have violated the due process and contract clauses of both the Florida and U.S. Constitutions.

9.    For these reasons, GEICO's Second and Fourth Affirmative Defenses – both of which assert new immunities and protections for insurers that were created by HB 837 – fail as a matter of law.

WHEREFORE, Plaintiffs, Jacob Michael Dial and Jesus Pena, respectively request this Honorable Court enter partial summary judgment in their favor on GEICO's Second and Fourth Affirmative Defenses.

## MEMORANDUM OF LAW

## I.    Florida's insurance bad faith law in third-party bad faith actions.

To explain why HB 837's creation of subsections 624.155(4) and (5)(b) fundamentally alters the terms of the deal that were bargained for, and paid for, by GEICO's insured, Plaintiffs will first summarize the common law as it existed from 1938 through March 24, 2023. Plaintiffs will then explain the effect of the new statute as relevant to GEICO's Second and Fourth Affirmative Defenses.

### a.    Florida bad faith law before HB 837.

In diversity cases, this Court must apply the forum state's substantive law – here, Florida's. Eres v. Progressive Am. Ins. Co., 998 F.3d 1273, 1278 n.4 (11th Cir. 2021). Since at least 1938, Florida has required insurance companies handling liability claims to exercise the same "degree of care and diligence which a man of ordinary care and

prudence should exercise in the management of his own business." <u>Auto Mut. Indem. Co. v. Shaw</u>, 184 So. 852, 859 (Fla. 1938). This duty of care arises out of the insurance contract, which requires the insured to surrender to the insurance carrier all control over the handling of the claim, including all decisions regarding litigation and settlement. <u>Boston Old Colony Ins. Co. v. Gutierrez</u>, 386 So. 2d 783, 785 (Fla. 1980); <u>see also</u> <u>Harvey v. GEICO Gen. Ins. Co.</u>, 259 So. 3d 1, 6 (Fla. 2018); <u>Berges v. Infinity Ins. Co.</u>, 896 So. 2d 665, 682 (Fla. 2004).

"In exchange for this relinquishment of control over settlement and the conduct of the litigation, the insurer obligates itself to act in good faith in the investigation, handling, and settling of claims brought against the insured." <u>Berges</u>, 896 So. 2d at 682-83. Because the insurer has complete control over the settlement and defense of the liability claim, and may expose the insured to an excess judgment, the relationship between the insurance carrier and its customer is "fiduciary in nature, much akin to that of attorney and client." <u>Baxter v. Royal Indem. Co.</u>, 285 So. 2d 652, 655 (Fla. Dist. Ct. App. 1973); <u>see also</u> <u>Harvey</u>, 259 So. 3d at 3.

Encompassed within the insurer's overarching duty of good faith are several distinct duties, each of which serves the ultimate goal of protecting the insured from excess liability.

> This good faith duty obligates the insurer to advise the insured of settlement opportunities, to advise as to the probable outcome of the litigation, to warn of the possibility of an excess judgment, and to advise the insured of any steps he might take to avoid same. The insurer must investigate the facts, give fair consideration to a settlement offer that is not unreasonable under the facts, and **settle, if possible, where a reasonably prudent person, faced with the prospect of paying the total recovery, would do so.** Because the duty of good

faith involves diligence and care in the investigation and evaluation of the claim against the insured, negligence is relevant to the question of good faith.

Harvey, 259 So. 3d at 6-7 (quoting Boston Old Colony, 386 So. 2d at 785) (emphasis

added); see also Brink v. Direct Gen. Ins. Co., 38 F.4th 917, 922-23 (11th Cir. 2022)

(holding the trial court reversibly erred by refusing to instruct the jury on these duties).

However, these obligations "are not a mere checklist." Harvey, 259 So. 3d at 6. In

other words,

> [a]n insurer is not absolved of liability simply because it advises its insured of settlement opportunities, the probable outcome of the litigation, and the possibility of an excess judgment. **Rather, the critical inquiry in a bad faith [case] is whether the insurer diligently, and with the same haste and precision as if it were in the insured's shoes, worked on the insured's behalf to avoid an excess judgment.**

Id. at 7 (emphasis added); see also Brink, 38 F.4th at 922-23. It logically follows the

"lack of a formal offer to settle does not preclude a finding of bad faith." Powell v.

Prudential Prop. & Cas. Ins. Co., 584 So. 2d 12, 14 (Fla. Dist. Ct. App. 1991). Indeed,

> where liability is clear, and injuries so serious that a judgment in excess of the policy limits is likely, an insurer has an affirmative duty to initiate settlement negotiations. In such a case, where the financial exposure to the insured is a ticking financial time bomb and suit can be filed at any time, any delay in making an offer under the circumstances of this case even where there was no assurance that the claim could be settled could be viewed by a fact finder as evidence of bad faith.

Harvey, 259 So. 3d at 7 (cleaned up, citations omitted).

"[The insurer's] ultimate tender of the policy limits does not automatically

insulate an insurer from liability for bad faith." Powell, 584 So. 2d at 15. Ultimately,

"it is for the jury to decide whether the insurer failed to 'act in good faith with due

regard for the interests of the insured.'" Harvey, 259 So. 3d at 7 (quoting Boston Old

Colony, 386 So. 2d at 785).

At common law, if the insurer breaches one or more of its good faith duties when handling a liability claim, resulting in an excess judgment against the insured, the insurer is liable for the entire judgment, including any accrued interest thereon. See State Farm Mut. Auto. Ins. Co. v. Laforet, 658 So. 2d 55, 58 (Fla. 1995) (noting that in third-party bad faith actions, "if an insurer was found to have acted in bad faith, the insurer would have to pay the entire judgment entered against the insured in favor of the injured third party, including any amount in excess of the insured's policy limits"); Venn v. St. Paul Fire & Marine Ins. Co., 99 F.3d 1058, 1068 (11th Cir. 1996) (applying Florida bad faith law and holding an insurer found to have acted in bad faith must pay not only the amount of the final judgment but also prejudgment interest).

**b.    How HB 837's amendments to section 624.155 change Florida bad faith law.**

Prior to HB 837, no portion of section 624.155, Florida Statutes, applied to common law bad faith claims. See Fla. Stat. § 624.155(8) (2022) ("The civil remedy specified in this section does not preempt any other remedy or cause of action provided for pursuant to any other statute or pursuant to the common law of this state."). However, HB 837 created new insurer immunities and defenses for both statutory *and* common-law bad faith claims. Two sections are relevant to GEICO's Second and Fourth Affirmative Defenses and, in turn, this motion.

First, section 624.155(4)(a) (under which GEICO asserts Plaintiffs' claims are barred in its Second Affirmative Defense) provides as follows:

(4)(a)   An action for bad faith involving a liability insurance claim, including any such action brought under the common law, shall not lie if the insurer tenders the lesser of the policy limits or the amount demanded by the claimant within 90 days after receiving actual notice of a claim which is accompanied by sufficient evidence to support the amount of the claim.

Thus, in those third-party bad faith actions where HB 837 applies, the insurer is *immune* if it tenders the applicable policy limits "within 90 days after receiving actual notice of a claim which is accompanied by sufficient evidence to support the amount of the claim." This new immunity would apply even if the insurer failed to settle the liability claim in bad faith before the expiration of the 90-day period. This is a significant change to the common law, which holds the insurer liable for any damages caused by a bad faith failure to settle, no matter when the alleged bad faith occurred. The statutory immunity also eliminates certain "Powell cases," where the liability insurer's bad faith was predicated on its failure to affirmatively offer to settle the liability claim in a timely manner after it knew or should have known the insured was facing a "ticking financial time bomb." See, e.g., Powell, 584 So. 2d at 13-15 (holding a reasonable jury could find the liability insurer acted in bad faith by not tendering the policy limits sooner, where it was first offered 62 days after the accident); Ilias v. USAA Gen. Indem. Co., 61 F.4th 1338, 1345-47 (11th Cir. 2023) (holding a reasonable jury could find the liability insurer was liable for bad faith failure to settle because of its undue delay in initiating settlement negotiations, where insurer first offered to settle for the liability limits 48 days after the accident); Bannon v. GEICO Gen. Ins. Co., 743 F. App'x 311, 313 (11th Cir. 2018) (affirming jury verdict in favor of the plaintiff in the bad faith action, and against GEICO, where GEICO first offered

to settle for the policy limits 26 days after the accident).

Second, section 624.155(5)(b) (referenced in GEICO's Fourth Affirmative Defense) creates a new duty of good faith owed by injured claimants, insureds, and their representatives to the insurance company. It provides:

> (b)1.   The insured, claimant, and representative of the insured or claimant have a duty to act in good faith in furnishing information regarding the claim, in making demands of the insurer, in setting deadlines, and in attempting to settle the claim.

If the jury finds that duty was breached, then the jury in the bad faith action "may reasonably reduce the amount of damages awarded against the insurer." Fla. Stat. § 624.155(5)(b)2.

Under the common law, injured claimants and their attorneys do *not* owe any such duty of good faith to liability insurers (nor do liability insurers owe any such duty to injured claimants or their attorneys). The relationship between the claimant/claimant's attorney and liability insurer is inherently adversarial in nature. That is why courts applying Florida law have unanimously refused to allow liability insurers to raise "comparative bad faith" affirmative defenses in a third-party bad faith case. See Nationwide Prop. & Cas. Ins. Co. v. King, 568 So. 2d 990, 990-91 (Fla. Dist. Ct. App. 1990) ("We decline to create a new affirmative defense of comparative bad faith."); Am. Builders Ins. Co. v. S.-Owners Ins. Co., No. 9:20-CV-81357, 2021 WL 3005485, at *2 (S.D. Fla. July 15, 2021); MI Windows & Doors, LLC v. Liberty Mut. Fire Ins. Co., No. 8:14-CV-3139-T-23MAP, 2018 WL 2288288, at *6 (M.D. Fla. May 18, 2018); Royal Indem. Co. v. Liberty Mut. Fire Ins. Co., No. 07-80172-CIV, 2008

WL 557963, at *1 (S.D. Fla. Feb. 28, 2008); see also Harvey, 259 So. 3d at 11 (holding the insurer is not absolved from liability for bad faith if the insured's own actions or inactions contributed to the excess judgment). However, newly enacted section 624.155(5)(b) effectively overrules that precedent, thereby allowing the insurer to compare its own bad faith conduct with that of the claimant, insured, or their attorneys if they breach the new statutory duty of good faith. This, in turn, will reduce the amount of damages owed by the insurer, to the detriment of both the injured claimant and insured.

In sum, the amendments to section 624.155 which form the basis for GEICO's Second and Fourth Affirmative Defenses fundamentally change the parties' substantive rights and obligations in third-party insurance bad faith actions. For that reason, those amendments cannot be applied to *this* case, which arises out of a policy issued nearly three years before HB 837.

## II.   GEICO's Second and Fourth Affirmative Defenses fail as a matter of law because sections 624.155(4) and (5)(b), as amended by HB 837, do not apply in any insurance bad faith case arising out of a policy issued on or before March 24, 2023.

The issue before the Court is whether HB 837's amendments to section 624.155 can be applied to claims arising under an insurance policy issued *before* the statute's enactment, in a lawsuit filed *after* the effective date.

When analyzing whether a new law applies to an insurance contract, courts applying Florida law "look at the date the insurance policy was issued and not the date that the suit was filed or the accident occurred, because the statute in effect at the time

an insurance contract is executed governs substantive issues arising in connection with that contract." Menendez v. Progressive Exp. Ins. Co., Inc., 35 So. 3d 873, 876 (Fla. 2010) (internal citation omitted). Thus, where, as here, the subject insurance policy was issued before the statute was enacted, courts applying Florida law characterize the issue as being one of "retroactivity" – even if the lawsuit was not filed until after the new law was enacted. Id. at 877 (addressing lawsuit filed after statutory amendment and noting that "[b]ecause in this case the statute was enacted after the issuance of the insurance policy, the operative inquiry is whether the statute should apply retroactively").

To determine whether a statute "enacted after the issuance of the insurance policy . . . should apply retroactively," courts apply a "two-pronged test":

> **First**, the Court must ascertain whether the Legislature intended for the statute to apply retroactively. **Second**, if such an intent is clearly expressed, the Court must determine whether retroactive application would violate any constitutional principles.

Id. (emphasis added); see also, e.g., Dozois v. Hartford Ins. Co. of the Midwest, 595 F. Supp. 3d 1204, 1206 (M.D. Fla. 2022) (applying Menendez test to determine amendment to Fla. Stat. § 627.70152 could *not* be applied retroactively to homeowner's policy in effect before statute went into effect, in lawsuit filed after statute went into effect). Violation of *either* prong of the Menendez test prohibits courts from applying a new law retroactively.  Here, application of HB 837 fails *both* prongs.

As to the first prong, there is no basis for this Court to conclude the Legislature intended for HB 837's amendments to section 624.155 to apply to policies issued

before the effective date. Indeed, the language of HB 837 demonstrates the Legislature intended for exactly the opposite. This Court's analysis should stop there because it is bound by the Legislature's directive regarding the cases to which a new law applies. See Art. III § 9, Fla. Const. (assigning authority to determine how new laws take effect to the Legislature); Fleeman v. Case, 342 So. 2d 815, 817-18 (Fla. 1976) (explaining that the initial decision of when a new statute should apply is vested in the Legislature because "the forward or backward reach of proposed laws is irrevocably assigned in the forum best suited to determine that issue, and the judiciary is limited only to determining in appropriate cases whether the expressed retroactive application of the law collides with any overriding constitutional provision").

But if the Court deems it necessary to consider the second prong of the Menendez test, application of the amendments to section 624.155(4) and (5)(b) to insurance policies issued before the effective date would unconstitutionally violate due process rights and impair the obligation of contracts.

Accordingly, the amendments to section 624.155(4) and (5)(b) do not and cannot apply to this case.

   a.   **The Legislature did not intend for HB 837's amendments to section 624.155(4) or (5)(b) to apply to policies issued before the effective date because the amendments "affect a right under an insurance contract."**

Again, under the first prong of the Menendez test, the Court must look to whether the Legislature "clearly expressed" an intention to apply the amendments to section 624.155 retroactively to policies issued before the effective date. The plain language of HB 837 "clearly expresses" the opposite – that the amendments only apply

prospectively to cases arising out of policies issued after the effective date.

As a preliminary matter, Florida Statutes section 624.21, which remains unaltered since it was first passed in 1982 (Laws 1982, c. 82-386, § 4), provides that "Each amendment to this code shall be construed to operate prospectively, unless a contrary legislative intent is specified."[4] Thus, by statute, the default rule is that any revision to section 624.155 will only apply to policies issued after the effective date of law. Against that backdrop, we now turn to HB 837.

Section 30 of HB 837 provides "**Except as otherwise expressly provided in this act,** this act shall apply to causes of action filed after the effective date of this act." The preceding two sections "expressly provide" for later dates of application. Section 28 (which has no bearing on this action) provides that changes to the statute of limitations only "apply to causes of action accruing after" March 24, 2023. Section 29 (which is critical to this action) then provides as follows:

> This act shall not be construed to impair any right under an insurance contract in effect on or before the effective date of this act. **To the extent that this act affects a right under an insurance contract**, this act applies to an insurance contract issued or renewed **after** the effective date of this act.

(emphasis added). Thus, the only fair reading of section 29 is that if some provision of HB 837 "affects a right under an insurance contract," it cannot apply to any policy issued on or before March 24, 2023. See Hassen v. State Farm Mut. Auto. Ins. Co., 674 So. 2d 106, 108 (Fla. 1996) ("This Court will not divine an intent that a new law

---

[4] See Fla. Stat. § 624.01 ("Chapters 624-632, 634, 635, 636, 641, 642, 648, and 651 constitute the 'Florida Insurance Code'.").

be applied to disturb existing contractual rights or duties when there is no express indication that such is the legislature's intent."). In turn, here, the only remaining question is whether the HB 837 amendments that form the basis of GEICO's Second and Fourth Affirmative Defenses "affect a right under an insurance contract."

"[I]t is generally accepted that the statute in effect at the time an insurance contract is executed governs substantive issues arising in connection with that contract." Hassen, 674 So. 2d at 108. This is so because the "laws in force at the time of the making of a contract enter into and form a part of the contract as if they were expressly incorporated into it." Fla. Beverage Corp. v. Div. of Alcoholic Beverages & Tobacco, Dep't of Bus. Regul., 503 So. 2d 396, 398 (Fla. Dist. Ct. App. 1987); see also Dep't of Ins., State of Fla. v. Tchrs. Ins. Co., 404 So. 2d 735, 741 (Fla. 1981) ("It is fundamental that the laws of Florida are a part of every Florida contract"). Thus, as a matter of law, the 2019 version of section 624.155 (which was in effect when the subject GEICO policy was issued) was a part of the policy as if it were expressly incorporated into it. See Fla. Beverage Corp., 503 So. 2d at 398; Grant v. State Farm Fire and Cas. Co., 638 So. 2d 936, 938 (Fla. 1994) ("Where a contract of insurance is entered into on a matter surrounded by statutory limitations and requirements, the parties are presumed to have entered into such agreement with reference to the statute, and the statutory provisions become a part of the contract.").

Likewise, the common law duties of good faith and remedy for their breach *as they existed in May 2020* were also an implied part of the GEICO policy. See Shavers v. Duval Cnty., 73 So. 2d 684, 689 (Fla. 1954) ("It has long been firmly established that

15

the laws existing at the time and place of the making of the contract and where it is to be performed which may affect its validity, construction, discharge and enforcement, enter into and become a part of the contract as if they were expressly referred to or actually copied or incorporated therein."); Lanza v. Damian Carpentry, Inc., 6 So. 3d 674, 676 (Fla. Dist. Ct. App. 2009) ("Contracts are made in legal contemplation of the existing applicable law.").

As the Florida Supreme Court explained 55 years ago, the insurer's contractual duty to defend "justifies an implication that the insurer will exercise ordinary care and good faith" in handling the claim. Nationwide Mut. Ins. Co. v. McNulty, 229 So. 2d 585, 86 (Fla. 1969) (internal citation omitted). "**This obligation of good faith is implied in the contract** because the insurer has taken over the entire defense of the matter and, in most contracts, the insured is prohibited from interfering in any manner with the litigation and settlement." N. Am. Van Lines, Inc. v. Lexington Ins. Co., 678 So. 2d 1325, 1330 (Fla. Dist. Ct. App. 1996) (emphasis added); see also Allstate Ins. Co. v. Regar, 942 So. 2d 969, 972 (Fla. Dist. Ct. App. 2006) ("**The duty of good faith is a contractual duty**, and an action for its breach is governed by contract law.") (emphasis added). Thus, although the damages recoverable in a bad faith case are "extracontractual" in nature (meaning for an amount above the policy limits), the duty which is breached is "a contractual obligation implied in law, namely good faith." N. Am. Van Lines, 678 So. 2d at 1330.

In light of the aforementioned authorities, it should be obvious the amendments

to section 624.155(4) and (5)(b) "affect[] right[s] under an insurance contract." As explained above, section 624.155(4)(a), when applicable, would immunize an insurer from the damages caused by its bad faith failure to settle. Similarly, section 624.155(5)(b), when applicable, would allow a jury to reduce the insurer's liability for the damages caused by its bad faith failure to settle. These new sections, if applied, would effectively prohibit insureds and third-party beneficiaries from enforcing the duty of good faith incorporated as a matter of law into a policy issued on or before March 24, 2023. "Nothing can be more material to the obligation [of contract] than the means of enforcement." Home Bldg. & Loan Ass'n v. Blaisdell, 290 U.S. 398, 430 (1934); see also, e.g., Gen. Motors Corp. v. Romein, 503 U.S. 181, 189 (1992) ("If any subsequent law affect to diminish the duty, or to impair the right, it necessarily bears on the obligation of the contract. A change in the remedies available under a contract, for example, may convert an agreement enforceable at law into a mere promise, thereby impairing the contract's obligatory force.") (quotations and citations omitted).

Thus, if HB 837's amendments were to apply to Plaintiffs' insurance bad faith claims (as GEICO alleges in its Second and Fourth Affirmative Defenses), those amendments would affect contractual rights and obligations written into a policy issued *years before* the effective date of the legislation. That directly contradicts the "clear expression" by the Legislature in Section 29: that the amendments should *not* apply where the subject policy was issued before the effective date.  See Menendez, 35 So. 3d at 877; Fla. Stat. § 624.21.

In sum, the legislative directive in Section 29 prohibits this Court from applying

the amendments to section 624.155(4) and (5)(b) to this case (which arises out of a May 2020 policy) because the changes "affect a right under an insurance contract."[5] The amendments thus fail the first prong of the <u>Menendez</u> test, and the Court may grant Plaintiffs' motion as to GEICO's Second and Fourth Affirmative Defenses on that basis alone.

### b. Applying HB 837's amendments to Section 624.155(4) and (5)(b) to policies issued before the effective date would violate the Florida and U.S. Constitutions.

If the Court agrees with Plaintiffs that the answer to the first prong of the <u>Menendez</u> test is "no, the Legislature did not clearly express an intention to apply the amendments to section 624.155 retroactively to policies issued before the effective date," then the Court should refrain from addressing the second prong. <u>See</u> <u>Old Port Cove Holdings, Inc. v. Old Port Cove Condo. Ass'n One, Inc.</u>, 986 So. 2d 1279, 1284 (Fla. 2008) ("We conclude that the plain language of [the statute] does not evince an intent that the statute apply retroactively. We therefore need not address the second prong."). Doing so would be consistent with (and is arguably mandated by) the principle of judicial restraint, as recognized in both Florida and federal courts. <u>See, e.g.</u>, <u>In re Holder</u>, 945 So. 2d 1130, 1133 (Fla. 2006) ("[W]e have long subscribed to a principle of judicial restraint by which we avoid considering a constitutional question

---

[5] And to the extent there is any doubt, the Court should construe Section 29 to avoid the constitutional issues that would be created by the application of section 624.155(4) and (5)(b) (which will be discussed below). <u>See, e.g.</u>, <u>State v. Giorgetti</u>, 868 So. 2d 512, 518 (Fla. 2004) (noting that courts are "obligated to construe statutes in a manner that avoids a holding that a statute may be unconstitutional"); <u>United States v. Palomar-Santiago</u>, 141 S. Ct. 1615, 1622 (2021) (noting that under the canon of constitutional avoidance, courts should "construe statutes to avoid not only the conclusion that they are unconstitutional, but also grave doubts upon that score") (cleaned up).

when the case can be decided on non-constitutional grounds."); <u>PDK Labs., Inc. v. United States Drug Enf't Admin.</u>, 362 F.3d 786, 799 (D.C. Cir. 2004) (Roberts, J., concurring) ("The cardinal principle of judicial restraint – if it is not necessary to decide more, it is necessary not to decide more – counsels us to go no further.").

However, assuming *arguendo* the Court reaches the constitutional questions, then it should find that applying the amendments to sections 624.155(4) and (5)(b) to policies issued before the effective date would violate the due process and contracts clauses of the Florida and U.S. Constitutions. <u>See</u> Fla. Const. art. I, §§ 9 and 10; U.S. Const. amend. XIV § 1. Although the analysis regarding potential due process and contracts clause violations are often intertwined, they are "separate considerations requiring separate analyses." <u>Ferretti v. Nova Se. Univ., Inc.</u>, 586 F. Supp. 3d 1260, 1271 n.6 (S.D. Fla. 2022) (citing <u>Menendez</u>, 35 So. 3d at 877, n.4).

Plaintiffs, as third-party beneficiaries of the contract between GEICO and its insured,[6] step into the insured's shoes and thus have standing to challenge GEICO's efforts to apply the new statute in an unconstitutional manner. <u>See</u> <u>Pudlit 2 Joint Venture, LLP v. Westwood Gardens Homeowners Ass'n, Inc.</u>, 169 So. 3d 145, 150 (Fla. Dist. Ct. App. 2015) ("A third-party beneficiary to a contract possesses the same constitutional right against the impairment of that contract as the parties to the contract."); <u>Boston Old Colony Ins. Co. v. Gutierrez</u>, 325 So. 2d 416, 417 (Fla. Dist.

---

[6] <u>Thompson</u>, 250 So. 2d at 263. Whether there is a legally enforceable right under state law sufficient to confer standing is determined by state law. <u>See</u> <u>Bochese v. Town of Ponce Inlet</u>, 405 F.3d 964, 981 (11th Cir.2005).

Ct. App. 1976) ("As a third party beneficiary of the insurance policy, Gutierrez [the injured claimant] stands in the same posture as that of Brown, the insured"); <u>see also</u> <u>Shingleton v. Bussey</u>, 223 So. 2d 713, 716-18 (Fla. 1969) (recognizing, in an analogous situation, that a liability insurer cannot enforce a policy provision against the injured third-party beneficiary if doing so would violate the third-party beneficiary's due process rights).

### i. *Due Process*

Even when the Legislature expressly states a new statute is to have retroactive application, courts will refuse to apply it retroactively "if the statute impairs a vested right, creates a new obligation, **or** imposes a new penalty." <u>Menendez</u>, 35 So. 3d at 877 (emphasis added); <u>see also, e.g.</u>, <u>Metro. Dade Cnty. v. Chase Fed. Hous. Corp.</u>, 737 So. 2d 494, 503 (Fla. 1999) (holding statutes cannot be applied retrospectively "in those cases wherein vested rights are adversely affected or destroyed or when a new obligation or duty is created or imposed, or an additional disability is established, on connection with transactions or considerations previously had or expiated"); <u>Landgraf</u> <u>v. USI Film Prods.</u>, 511 U.S. 244, 266, 280 (1994) (noting a statute has retroactive effect, thereby causing due process concerns, when "it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed"). Thus, pursuant to both federal and Florida's due process clauses, a statute cannot be applied to an insurance policy issued before its effective date if application of the new statute would (1) impair vested rights, (2) create new obligations or duties, *or* (3) impose a new disability or penalty.

"The inquiry into whether a statute operates retroactively demands a commonsense, functional judgment about whether the new provision attaches new legal consequences to events completed before its enactment." Martin v. Hadix, 527 U.S. 343, 357-58 (1999) (cleaned up). "This judgment should be informed and guided by familiar considerations of fair notice, reasonable reliance, and settled expectations." Id. (cleaned up).

Here, GEICO wishes to focus only on the first prong of the due process analysis – whether application of the new statute would adversely affect or destroy vested rights – to argue that no rights vested until a final judgment was entered against its insured (which occurred after HB 837's effective date). GEICO ignores that the insureds and third-party beneficiaries had a vested contractual right to require GEICO to handle the liability claim in good faith "at the time the policy was issued (or at the latest when the loss occurred and the claim was submitted)." See Bay Farms Corp. v. Great Am. All. Ins. Co., 835 F. Supp. 2d 1227, 1242 (M.D. Fla. 2011) (declining to apply 2011 statutory amendment defining "structural damages" to 2008 policy providing sinkhole coverage, in lawsuit filed after 2011 amendment, where application of the new statute would impair the insured's vested right to insurance coverage for sinkhole losses and "severely, permanently, and immediately change the parties' economic relationship").

But the Court need not analyze whether the amendments to section 624.155 adversely affect any "vested rights." In truth, the answer to that question is irrelevant to this case. That is because HB 837's amendments to section 624.155 clearly violate the second and third prongs of the due process analysis because they create new

"obligations or duties" and impose new "disabilities or penalties" for insureds and third-party beneficiaries of liability insurance policies.

As explained above, newly enacted section 624.155(4) completely *immunizes* a liability insurer from any bad faith failure to settle if it tenders the policy limits within the first 90 days of receiving actual notice of the claim and sufficient evidence to support the amount of the claim. <u>Compare</u> <u>Powell</u>, 584 So. 2d at 15 (noting that an insurer's "tender of the policy limits does not automatically insulate an insurer from liability for bad faith"). This 90-day immunity period also encourages liability insurers to delay their investigation, evaluation, and attempted settlement of liability claims. <u>Compare</u> <u>Powell</u>, 584 So. 2d at 13-15; <u>Ilias</u>, 61 F.4th at 1345-47; <u>Bannon</u>, 743 F. App'x at 313. Therefore, section 624.155(4) impairs the rights of and creates new disabilities for insureds and third-party beneficiaries.

Similarly, section 624.155(5)(b), as amended, explicitly creates new "obligations or duties" for insureds, injured claimants and their counsel that did not exist prior to March 24, 2023. And if the new duty of good faith is breached, then the jury in the bad faith case may reasonably reduce the insurer's liability, thereby imposing a "penalty or disability" on both insureds and third-party beneficiaries. <u>Compare</u> <u>Harvey</u>, 259 So. 3d at 11 and <u>King</u>, 568 So. 2d at 990–91.

For those reasons, the due process clauses of the Florida and U.S. Constitutions prohibit retroactive application of both section 624.155(4) and (5)(b) to a policy issued nearly three years earlier. <u>See, e.g.</u>, <u>Menendez</u>, 35 So. 3d at 878 (holding a new law could not be retroactively applied to insurance policies issued before the effective date

of the amendment because, *inter alia*, (1) it imposed new penalties for non-compliance with a pre-suit notice of intent to initiate litigation, (2) limited the insured's ability to recover attorney fees, and (3) granted the insurer additional time to pay benefits owed).

### ii.    *Impairment of obligation of contracts*

In addition to due process, "[r]etroactivity will also be rejected where a statute impairs the obligation of contracts in violation of article I, section 10, of the Florida Constitution." Menendez, 35 So. 3d at 878 n.4 (citing Fleeman, 342 So. 2d at 818); see also R.A.M. of S. Fla. v. WCI Communities, 869 So. 2d 1210, 1217 (Fla. Dist. Ct. App. 2004) ("Where contract rights are involved, the invalidation of the retroactive application of civil legislation may be based on the conclusion that the legislation impairs the obligation of contract."). When analyzing whether this section of the Florida Constitution has been violated, "federal courts are required to construe the Florida Constitution as would the Supreme Court of Florida." Geary Distrib. Co., Inc. v. All Brand Importers, Inc., 931 F.2d 1431, 1434 (11th Cir. 1991) (cleaned up).

It has long been a "well-accepted principle that virtually no degree of contract impairment is tolerable in [Florida]." Pomponio v. Claridge of Pompano Condo., Inc., 378 So. 2d 774, 780 (Fla. 1979). It is equally well-established that any "subsequent legislation which diminishes the value of a contract is repugnant to [Florida's] Constitution." Dewberry v. Auto-Owners Ins. Co., 363 So. 2d 1077, 1080 (Fla. 1978).[7]

---

[7] "Florida courts interpreting the Florida contract clause appear to tolerate less impairment than the federal courts interpreting the federal contract clause." Geary Distrib. Co., 931 F.2d at 1434 n.4. Thus, to avoid engaging in needless academic discussion, Plaintiffs will not address whether section 624.155, as amended, would also violate the federal contract clause.

Guided by these principles, Florida law provides that a new law impermissibly impairs a preexisting contract if it has "the effect of rewriting antecedent contracts in a manner that changes the substantive rights of the parties to existing contracts." Searcy, Denney, Scarola, Barnhart & Shipley, etc. v. State, 209 So. 3d 1181, 1190–91 (Fla. 2017) (cleaned up). To avoid changing the substantive rights of the parties to insurance contracts, courts generally apply the laws in effect at the time the contract was issued. See Hassen, 674 So. 2d at 108; see also State Farm Mut. Auto. Ins. Co. v. Hassen, 650 So. 2d 128, 134 (Fla. Dist. Ct. App. 1995) ("In order to prevent the impairment of an insurance contract, Florida law generally requires that the statute in effect at the time the insurance contract is executed governs any issues arising under the contract.") (cleaned up), approved, 674 So. 2d 106 (Fla. 1996).

As discussed at length above, sections 624.155(4) and (5)(b) severely limit the ability of insureds and third-party beneficiaries to hold liability insurers accountable for certain breaches of the common law good faith duties, which were incorporated into every pre-HB 837 policy upon issuance as a matter of law. Thus, there can be no serious dispute that the new laws, passed in March 2023, "have the effect of rewriting" the May 2020 liability policy "in a manner that changes the substantive rights of the parties to existing contracts," thereby diminishing the value of the contract. See Searcy, Denney, 209 So. 3d at 1190-91; Dewberry, 363 So. 2d at 1080.

As such, section 624.155(4) and (5)(b) cannot be constitutionally applied to this case (or any other case arising out of a liability policy issued on or before March 24, 2023). See, e.g., Dewberry, 363 So. 2d at 1079-80 (holding it would violate the

contracts clause to apply a new statute which prohibited stacking of UM coverages to policies issued before the effective date); <u>Lumbermens Mut. Cas. Co. v. Ceballos</u>, 440 So. 2d 612, 613 (Fla. Dist. Ct. App. 1983) (holding application of a new law to a policy issued before the effective date "would constitute a legislative impairment of contract in violation of article I, section 10 of the Florida Constitution" where the effect of the new law was to impose an additional obligation on a PIP insurer and hold them liable for additional benefits if it failed to comply with the new obligation).

### III.    Conclusion.

For the foregoing reasons, GEICO's Second and Fourth Affirmative Defenses fail as a matter of law.

<u>**CERTIFICATE OF FILING AND SERVICE**</u>

I HEREBY CERTIFY that on **May 8, 2024**, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

*/s/ Brent Steinberg*
BRENT STEINBERG
Florida Bar No. 0085453
BRENNA SPINNER
Florida Bar No. 1028617
SWOPE, RODANTE P.A.
1234 E. 5th Avenue
Tampa, Florida 33605
Tel.: (813) 273-0017
Fax: (813) 223-3678
Appeals@swopelaw.com
**Attorney for Plaintiffs**
